FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | | |
|---|---|---|
| CHRISTOPHER BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2005-2 |
| | ) | |
| WILLIAM A. CURTIS, Jr. in his | ) | |
| individual capacity, and one | ) | |
| or more John Does in their | ) | |
| individual capacities and one | ) | |
| or more Jane Does in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ATTORNEYS:

**Andrew C. Simpson, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff.*

**Tamika M. Archer, Esq.**
St. Thomas, U.S.V.I.
    *For defendant William A. Curtis, Jr.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of defendant William A. Curtis, Jr. ("Curtis") for summary judgment against the plaintiff, Christopher Barton ("Barton").

### I. FACTUAL AND PROCEDURAL BACKGROUND

Barton was previously married to Mirna Araceli Barton ("Mrs. Barton"). The couple had two children. In June, 1999, Mrs.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 2

Barton filed a petition for dissolution of marriage in state court in Broward County, Florida (the "Florida Court").  On or about August 6, 1999, a General Master of the Florida Court signed a document entitled "Findings and Recommendations" (the "General Master Report").  In that document, the Master found that Barton had unresolved drug problems and questionable fitness as a parent.  The Master recommended that the Bartons share parental responsibility, with Mrs. Barton as primary residential parent.  The Master also purported to require the Bartons' children to be returned to Broward County no later than August 2, 1999, and the Bartons not to leave that county with their children.

On August 24, 1999, a judge of the Florida Court signed a document entitled "Order of Ratification Upon Report of the General Master" (the "Ratification Order"), purporting to approve the General Master Report in all respects, subject to timely objections.[1]

At some point in August, 1999, Barton moved with the couple's children to St. Thomas, U.S. Virgin Islands.

On November 30, 1999, a judge of the Florida Court signed a document entitled "Order to Pick-Up Minor Children" (the "Pick-Up Order"), purporting to direct all sheriffs in Florida to take the

---

[1]  The record does not reflect whether any party filed objections.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 3

Bartons' children into custody.[2]

On March 13, 2000, Barton filed a petition in the Superior

Court of the Virgin Islands[3], seeking sole custody of the

children.  In his petition, Barton represented that the children

had resided with him from February, 1999 until December, 1999,

during his separation from Mrs. Barton.  After a hearing, on

September 7, 2000, the Superior Court issued an order awarding

Barton sole custody.

On June 14, 2001, the Superior Court amended the September

7, 2000, order by awarding the Bartons joint custody (the

"Amended Order").[4]  In its Amended Order, the Superior Court

found that Barton had violated an order of the Florida Court[5] by

leaving Florida with the children and that Barton "has repeatedly

and blatantly made fraudulent misrepresentations of material

facts and, as such, has committed fraud upon this Court." (Def.'s

_____

[2]  The parties do not dispute that the Florida Court issued
the Pick-Up Order but do dispute that order's import.

[3]  Effective January 1, 2005, the name of the Territorial
Court changed to Superior Court of the Virgin Islands.  *See* Act of
Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687
(2004).  For the sake of clarity, however, the Court will refer
to the former Territorial Court only as the Superior Court.

[4]  The record does not indicate the information on which the
Superior Court relied in issuing its Amended Order.

[5]  The Superior Court's Amended Order refers to the Florida
Court's August 6, 1999, General Master Report as an "order," but
does not mention the August 24, 1999, Ratification Order.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 4

Mot. for Summ. J., Exh. C at 10.)   The Superior Court concluded

that it should give full faith and credit to the Florida Court's

order[6] and, accordingly, awarded the Bartons joint parental

responsibility, with Mrs. Barton as the primary residential

parent.   The Amended Order also purported to direct all federal

and local law enforcement authorities throughout the United

States to restore custody of the children to Mrs. Barton.

On August 8, 2001, Mrs. Barton filed a complaint in the

Superior Court alleging that Barton had removed the couple's

children from the Virgin Islands to the continental United States

in violation of the Amended Order.   Curtis, an investigator with

the Special Investigations Division of the Virgin Islands

Department of Justice, was assigned by the Attorney General of

the Virgin Islands to investigate Mrs. Barton's complaint.

On January 8, 2003, Curtis presented an affidavit (the "2003

Affidavit") to the Superior Court, averring that there was

probable cause to arrest Barton for alleged violations of Title

14, Section 843 of the Virgin Islands Code, Fraudulent claims

upon the government ("Section 843").[7]   On that same day, a judge

---

[6]   The Superior Court again referenced not the Ratification
Order but the General Master Report.

[7]   Title 14, Section 843 criminalizes various acts of fraud
on the Government of the Virgin Islands:

Whoever--

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 5

of the Superior Court signed a warrant for Barton's arrest for

fraudulent claims upon the government, in violation of Section

843.

Thereafter, Barton was arrested in South Carolina and

returned to the Virgin Islands for trial.  Barton was convicted

of three counts of violating Section 843(2), which imposes

criminal liability on anyone who "knowingly and willfully

falsifies, conceals, or covers up by any trick, scheme, or device

a material fact . . . in any matter within the jurisdiction of .

. . of the government of the Virgin Islands." V.I. CODE ANN. tit.

---

(1) makes or presents any claim upon or against the government of the Virgin Islands or any officer, department, board, commission, or other agency thereof, knowing such claim to be false, fictitious or fraudulent;

(2) knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(3) makes any false or fraudulent statements or representations; or

(4) makes or uses any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition knowing the same to contain any fraudulent or fictitious statement or entry--

in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands, shall be fined not more than $500 or imprisoned not more than two years, or both.

V.I. CODE ANN. tit. 14, § 843.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 6

14, § 843(2).

The Appellate Division of this Court subsequently vacated Barton's conviction, concluding that the trial court had committed reversible error by admitting the Ratification Order because it had not been properly authenticated.[8]  The Appellate

---

[8]  The Appellate Division observed as follows:

The critical piece of evidence in this case is the purported Order of Ratification of the Florida Circuit Court.  The government admitted to the trial court that it did not receive the document from the Broward County Circuit Court Clerk and had not authenticated it as a true court order in the normal manner -- i.e. obtaining a copy of the document with the seal of the court thereon and the signature of the clerk attesting that it was a true and correct court document.  The government also admitted that it had not found the order in the records of the Broward County Circuit Court.  Despite the many warning signs that the order was not a valid authentic record of the Florida court, the trial judge allowed the document into evidence solely based on Mrs. Barton's testimony that she was given a copy by her Florida attorney.

*Barton v. Virgin Islands*, Civ. App. No. 2004-89, 2004 U.S. Dist. LEXIS 26383, at *8 (D.V.I. App. Div. Dec. 30, 2004) (internal citations omitted).  The Appellate Division also relied on an affidavit of the Florida Court judge who, according to the prosecution, had issued the Ratification Order.  That affidavit stated:

It appears that the original Ratified Order signed by me on August 24, 1999 was specifically not recorded based on the fact that a timely Exception had been filed.  I set a hearing regarding the Exception for September 15, 199 and entered an Order denying the Exception, but I did not enter an Order ratifying the General Master's Report. . . . No Order ratifying the General Master's Report was ever entered in this matter, again no custody order was ever entered in this case by me granting any rights of custody to either

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 7

Division remanded the case to the Superior Court with

instructions to dismiss it with prejudice.

Barton subsequently initiated this 42 U.S.C. § 1983

("Section 1983")[9] action against Curtis, acting in his individual

capacity, and other unnamed defendants.  Barton alleges that

Curtis made false statements in the 2003 Affidavit.  Barton

further alleges that Curtis's actions violated his

"constitutional rights, including, without limitation, his right

to due process under the law and his right to liberty." (Compl. ¶

11.)

In August, 2005, Curtis moved for summary judgment on the

basis of qualified immunity.  After a hearing, this Court denied

that motion, finding that there were material facts in dispute

regarding whether Curtis knowingly or recklessly presented false

_____

parent regarding the above referenced children.

*Id.* at *6-7.

[9]  Section 1983 provides, in part, that

[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory . . ., subjects, or causes to be
subjected, any citizen of the United States or other
person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable
to the party injured[.]

42 U.S.C. § 1983.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 8

information to the Superior Court.[10]   Curtis appealed.   The Court

of Appeals for the Third Circuit dismissed Curtis's appeal for

lack of jurisdiction and therefore did not address the appeal on

its merits. *Barton v. Curtis*, 497 F.3d 331 (3d Cir. 2007).[11]

Curtis now moves again for summary judgment on the basis of

absolute immunity or, in the alternative, qualified immunity.

Barton has filed an opposition and Curtis a reply.[12]

---

[10]   In his first summary judgment motion, Curtis also
asserted that he could not be sued under Section 1983 because he
was acting in his official capacity at the time of the events
alleged in the complaint.   The Court did not explicitly address
Curtis's argument in this vein.   Curtis does not renew that
argument in his second summary judgment motion.   In any event,
the complaint clearly names Curtis as a defendant in his
individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991)
(holding that "state officials, sued in their individual
capacities, are 'persons' within the meaning of § 1983").

[11]   The Third Circuit found that it did not have jurisdiction
based on the Supreme Court's holding in *Johnson v. Jones*, 515
U.S. 304 (1995), which restricted "interlocutory appeals of
'qualified immunity' matters to cases presenting more abstract
issues of law." *Id*. at 317.   The Third Circuit reasoned that "the
issue as to whether Curtis knowingly or recklessly presented
false information" is a "disputed issue of fact [that] is
inseparable from the legal question of qualified immunity."
*Barton*, 497 F.3d at 336.   The court concluded that because this
Court's denial of Curtis's first motion was based on the
existence of disputed material facts, "the order falls within
*Johnson* and is one of the limited instances in which this Court
does not have jurisdiction to hear an appeal of summary judgment
in a 42 U.S.C. § 1983 cause of action where the defendant is
asserting qualified immunity." *Id.*

[12]   Curtis filed his motion on August 21, 2008.   Under normal
circumstances, a response to a motion for summary judgment is due
within twenty days of the filing of the motion. LRCi 56.1(b).   On
September 4, 2008, the Magistrate Judge issued an order requiring
Barton's response to be filed no later than September 18, 2008.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 9

## II.  **DISCUSSION**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985).  The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

Barton filed his response on September 19, 2008.  The record does not reflect that Barton sought, or was granted, an additional extension of time.

Furthermore, Local Rule of Civil Procedure 56.1(a)(2) provides that reply briefs must be filed within ten days of the filing of the non-moving party's response. LRCi 56.1(a)(2). Here, Barton filed his response on September 19, 2008.  Curtis filed his reply on October 7, 2008.  As such, Curtis's reply is also untimely.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 10

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III.   <u>ANALYSIS</u>

**A.   Absolute Immunity**

Curtis contends that he was acting as an investigator assisting Virgin Islands prosecutors in the preparation of the 2003 Affidavit.  Curtis claims entitlement to the same immunity that prosecutors enjoy in such circumstances.  Barton argues that Curtis is not entitled to absolute immunity or, alternatively, that Barton has waived the defense of absolute immunity.

"Most public officials are entitled only to qualified immunity" from Section 1983 actions. *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (stating that "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted).  However, "in light of the immunity historically accorded prosecutors at common law, state prosecutors are absolutely immune from liability under [Section] 1983 for actions performed in a quasi-judicial role." *Light v.*

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 11

*Haws*, 472 F.3d 74, 77 (3d Cir. 2007) (citation omitted).

"[P]articipation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role." *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (internal quotation marks and citations omitted).

Examples of prosecutorial actions that might warrant absolute immunity are "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Yarris*, 465 F.3d at 135 (internal quotation marks and citations omitted). In other words, "immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (internal quotation marks and citations omitted). In determining whether absolute immunity applies, courts focus on "the nature of the function performed, not the identity of the actor who performed it." *Light*, 472 F.3d at 78 (quoting *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001)).

In applying these standards, courts have granted absolute immunity to state police officers and investigators whose activities are quasi-judicial in nature. *See, e.g.*, *Broam v.*

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 12

*Bogan*, 320 F.3d 1023, 1033 (9th Cir. 2003); *Valdez v. City &
County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989) (holding
that police officers "charged with the duty of executing a
facially valid court order enjoy[] absolute immunity from
liability for damages in a suit challenging conduct prescribed in
that order"); *Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974)
(holding that quasi-judicial absolute immunity extended to police
and other court officers "for purely ministerial acts where they
do nothing other than perform orders issuing from a court").

In *Kalina v. Fletcher*, 522 U.S. 118 (1997), the plaintiff
was alleged to have stolen computer equipment from a school.  The
defendant prosecutor filed three documents to open a criminal
proceeding against the plaintiff for burglary.  The first two
documents were an information and a motion for an arrest warrant.
Both documents were unsworn.  The third document was a sworn
statement by a prosecutor that was labeled "Certification for
Determination of Probable Cause."[13]  That statement contained two
false assertions.  The plaintiff later sued the prosecutor based
on those false assertions.  The Supreme Court agreed with the
prosecutor that absolute immunity covered her acts associated
with the first two documents.  However, the Court found that
"personally attesting to the truth of the averment" in the

---

[13]  Washington State law requires that an arrest warrant be
supported by an affidavit or other sworn testimony. *Kalina*, 522
U.S. at 120.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 13

Certification was not a prosecutorial act. *Kalina*, 522 U.S. at
126.  The Court reasoned that any competent witness could have
performed that act and observed that the prosecutor was not
operating as "'an advocate for the State'" by submitting the
Certification. *Id.* at 126 (quotation omitted).

     After *Kalina*, courts have routinely denied absolute immunity
to prosecutors sued in their individual capacities for making
sworn statements in an affidavit in support of an application for
a warrant. *See*, *e.g.*, *Spurlock v. Thompson*, 330 F.3d 791, 799
(6th Cir. 2003) ("A prosecutor is not entitled to absolute
immunity for statements made in an affidavit supporting
application for arrest warrant.") (citation omitted); *Miller v.
Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) ("*Kalina* rejected
absolute immunity for a prosecutor attesting to facts in an
affidavit supporting an application for an arrest warrant.");
*Hart v. O'Brien*, 127 F.3d 424, 440 (5th Cir. 1997) (concluding
that an assistant county attorney "does not enjoy absolute
immunity from liability arising out of the inaccurate information
in the affidavit").

     In accordance with these decisions, this Court similarly
finds that Curtis is not entitled to absolute immunity for his
sworn statements in the 2003 Affidavit.[14]

----

     [14]  Because Curtis is not entitled to absolute immunity, the
Court need not reach Barton's contention that Curtis waived that
defense.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 14

**B.   Qualified Immunity**

Curtis argues in the alternative that he is at least
entitled to qualified immunity.

State officials "who are not entitled to absolute immunity
from a plaintiff's claims may nonetheless be entitled to
qualified immunity from those same claims." *Yarris*, 465 F.3d at
139 (citation omitted).  "Qualified immunity shields state
officials from suit when their conduct 'does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'" *Id.* at 140 (quoting *Harlow
v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity
gives ample room for mistaken judgments by protecting all but the
plainly incompetent or those who knowingly violate the law."
*Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006)
(quotation marks and citations omitted).  "Although qualified
immunity is a question of law determined by the Court, when
qualified immunity depends on disputed issues of fact, those
issues must be determined by the jury." *Id.* at 405 (citations
omitted).

The court conducts a two-step inquiry to determine whether
qualified immunity applies.  First, the court asks whether the
facts alleged, when taken in the light most favorable to the
plaintiff, show that the officer's conduct violated a
constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 15

If the court answers that question in the negative, the inquiry ends and the officer is entitled to immunity. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001). If the answer to that question is affirmative, the court asks next whether the right was clearly established. *Saucier*, 533 U.S. at 201. "The relevant dispositive inquiry in making this determination is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004) (quotation marks citations omitted). The questions whether a right is clearly established and whether an officer acted reasonably are questions of law for a court to decide. *Bartholomew v. Pennsylvania*, 221 F.3d 425, 428 (3d Cir. 2000).[15] The court may grant summary judgment if a reasonable juror could not conclude that the plaintiff's clearly established rights were violated. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

Barton claims that his arrest lacked probable cause. He

---

[15] The Third Circuit has noted the disagreement, among panels of the Third Circuit as well as the courts of appeals, over how *Saucier* is to be interpreted. In *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005), the court observed that "the dispute is whether a court must determine the issue of whether there has been a constitutional violation before reaching the qualified immunity question, or whether that inquiry is the first part of a two-pronged test for qualified immunity." *Id.* Although the *Wright* Court did not need to resolve this dispute, the court nevertheless remarked that other courts of appeals "acted reasonably" in applying "a two-step qualified immunity inquiry, with the first step being the 'constitutional issue' and the second being 'whether the right was clearly established.'" *Id.* at 601.

Barton v. Curtis, Jr., et al.
Civil No. 2005-2
Memorandum Opinion
Page 16

contends that Curtis's affidavit in support of that arrest

contained false information.[16]  To succeed on such a claim,

Barton must show that: (1) Curtis knowingly and deliberately, or

with a reckless disregard for the truth, made false statements or

omissions in the 2003 Affidavit; and (2) those statements or

omissions are material to a finding of probable cause. *Wilson*,

212 F.3d at 786-87 (citation omitted); *see also Franks v.*

*Delaware*, 438 U.S. 154 (1978); *Miller v. Prince George's County*,

475 F.3d 621, 627 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 109

(2007).

An affiant makes assertions with reckless disregard for the

truth if he entertains serious doubts about the truth of those

assertions or has obvious reasons to doubt the accuracy of the

information he reports. *Wilson*, 212 F.3d at 788 (citation

omitted).  An affiant makes an omission with reckless disregard

for the truth if he "withholds a fact in his ken that any

reasonable person would have known that this was the kind of

thing the judge would wish to know." *Id.* (quotation marks and

---

[16]  A material fabrication in a warrant application violates
the Warrant Clause of the Fourth Amendment. *Aponte Matos v.*
*Toledo-Davila*, 135 F.3d 182, 185 (1st Cir. 1998).  When "the
Fourth Amendment demands a factual showing sufficient to comprise
'probable cause,' the obvious assumption is that there will be a
truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164-65
(1978) (quotation marks and citation omitted).  Courts also apply
this standard to material misstatements and omissions in a
warrant application, which are barred by the Fourth Amendment.
*See United States v. Rumney*, 867 F.2d 714, 720 (1st Cir. 1989).

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 17

citations omitted).  The court determines the materiality of
assertions and omissions by removing the assertions and inserting
the omissions and then determining whether the "corrected"
affidavit still establishes probable cause. *Id.* at 789 (citation
omitted).

Barton claims that Curtis included the following assertions
with reckless disregard in the 2003 Affidavit[17]: (1) physical
custody of the Bartons' children was awarded to Mrs. Barton by
the Florida Court; (2) the Florida Court ordered Barton to return
his children to Broward County, Florida on or before August 2,
1999; (3) Barton, in violation of the Florida Court's order,
moved his children to St. Thomas; (4) Barton withheld information
about the Florida Court proceeding from the Superior Court; (5)
the Florida Court issued the Pick-Up Order; and (6) Curtis
believed that Barton fled Florida for the Virgin Islands after
learning of the Florida Court's order.  The alleged omissions
that Barton highlights in the 2003 Affidavit are as follows: (1)
Curtis believed that Barton had left Florida based on what the
Florida Court planned to do after the issuance of the General
Master Report, not once Barton learned of the Ratification Order;
(2) Curtis had no knowledge of exactly when Barton left Florida;

---

[17]   The statements that Barton identifies in his complaint
differ somewhat from those identified in his opposition to
Curtis's summary judgment motion.  The six statements the Court
has enumerated above are the result of a reconciliation and
streamlining of Barton's various pleadings.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 18

(3) the General Master Report did not have binding force; (4) Curtis did not determine whether timely objections to the Ratification Order had been filed; (5) the Ratification Order did not bear the time stamp of the Florida Court's clerk; (6) Curtis harbored animus toward Barton.

In underscoring these purported assertions and omissions, Barton attaches particular weight to Curtis's admission that he based his conclusions in the 2003 Affidavit almost exclusively on the Superior Court's Amended Order and did not independently verify any of the documentation on which the Superior Court relied.  In essence, Barton assails the thoroughness of Curtis's investigation to show that there was no probable cause for his arrest.

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson*, 212 F.3d at 789 (citation omitted).  "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  "Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." *Wright*, 409 F.3d at 602.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 19

Here, it is undisputed that Curtis relied almost exclusively

on the Superior Court's Amended Order in the preparation of the

2003 Affidavit.  In the Amended Order, the Superior Court found:

> Since the institution of this action but unbeknownst to
> this Court at that time, [Barton] has repeatedly and
> blatantly made fraudulent misrepresentations of
> material facts and, as such, has committed fraud upon
> this Court.
>
> Specifically, [Barton] committed fraud upon this Court
> by failing to inform this Court: (1) that the North
> Carolina court had relinquished jurisdiction of the
> custody matter to the Florida court, (2) and that the
> order of the North Carolina court awarding him
> temporary custody of the minor children was no longer
> valid once the Florida court had made its determination
> on the custody issue.
>
> [Barton] further committed fraud upon this Court by
> failing to inform this Court that he had been ordered
> to return the minor children to the state of Florida in
> the very same month that he moved them to the Territory
> of the Virgin Islands.

(Def.'s Mot. for Summ. J., Exh. C at 5-6.)

It is also undisputed that, after reviewing the Amended

Order, Curtis stated in the 2003 Affidavit that the Superior

Court

> found that . . . Barton, repeatedly and blatantly made
> fraudulent misrepresentations of material facts and, as
> such, has committed fraud upon the [Superior Court].
> In addition, the court has ordered that all law
> enforcement authorities of the Virgin Islands or any
> state; and administrative agencies, whether state,
> federal or local are authorized, in the daytime or in
> nighttime and any day of the week, to obtain physical
> custody of the minor children, thereby returning them
> to their mother [Mrs.] Barton.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 20

(Def.'s Mot. for Summ. J., Exh. A at 4.)[18]

Section 843 criminalizes fraudulent claims on the government.  Barton was convicted under Section 843(2).  That section makes it a crime to (1) "knowingly and willfully" (2) "falsif[y], conceal[], or cover[] up by any trick, scheme, or device" (2) "a material fact" (3) "in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands[.]" V.I. CODE ANN. tit. 14, § 843(2).

The Superior Court's finding that Barton had perpetrated a fraud on that court by misrepresenting material facts establishes probable cause to believe that Barton had violated Section 843(2).  Indeed, even if the Court corrected the 2003 Affidavit by removing the assertions and inserting the omissions that Barton spotlights, there would nevertheless be probable cause to believe that Barton had violated Section 843. *See*, *e.g.*, *Bagby v, Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996) (finding that a deputy sheriff whom the plaintiff accused of presenting an affidavit with recklessly false information was entitled to qualified immunity because the corrected affidavit still established probable cause).

At most, Barton's grievance really springs from Curtis's

---

[18] With only minor exceptions, every conclusion that Curtis included in the 2003 Affidavit derives practically verbatim from the Superior Court's Amended Order.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 21

alleged failure to confirm or impeach the documentation on which
the Superior Court relied.  The mere fact, however, that Curtis
could have explored other avenues or delved more deeply into the
documentation underlying the Amended Order does not negate the
probable cause established by that order. *See*, *e.g.*, *Cortez v.
McCauley*, 478 F.3d 1108, 1139 n.3 (10th Cir. 2007) ("[T]he law
books are replete with cases indicating that the fact that
officers might have conducted a more thorough investigation does
not negate the existence of probable cause.") (citations
omitted); *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000)
("Although an officer may not disregard readily available
exculpatory evidence of which he is aware, the failure to pursue
a potentially exculpatory lead is not sufficient to negate
probable cause."); *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir.
1998) ("The inquiry is whether an officer has reasonable grounds
on which to act, not whether it was reasonable to conduct further
investigation.").

     Where, as here, "the moving party makes a case for summary
judgment, the party opposing the motion has an *affirmative duty
to set forth specific facts* showing there is a genuine issue for
trial." *United Transp. Union v. Conemaugh & B. L. R. Co.*, 894
F.2d 623, 628 (3d Cir. 1990) (emphasis supplied; quotation marks
and citation omitted).  Barton has failed to meet that burden.

     As discussed above, a judge of the Superior Court found that

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 22

Barton committed fraud by making misrepresentations about the

Florida Court custody proceeding.  To show that Curtis made

assertions with reckless disregard about Barton's representations

to the Superior Court, Barton relies on an excerpt of the

transcript of the custody proceeding that he initiated in the

Superior Court.  In that proceeding, Barton stated that there had

been a custody proceeding before the Florida Court.[19]  When asked

during a deposition whether he agreed that Barton had revealed

the Florida Court proceeding to the Superior Court, Curtis

answered:

> [H]e revealed that there was some sort of custody
> matter that had been pending in a Florida court.  As to
> the specifics of it, there were items -- or issues in
> that Court hearing that he omitted or misrepresented to
> the Court.

(Curtis Dep. 76:15-19, May 23, 2008.)

     At most, this evidence, and the other evidence that Barton

has adduced[20], merely shows that the Superior Court judge may

---

     [19]  In that transcript, Barton also states that Mrs. Barton
voluntarily dismissed the Florida Court proceeding.

     [20]  Barton makes much, for instance, of Curtis's statement
during his deposition that Barton had left Florida for the Virgin
Islands at some point in August, 1999 after learning of the
General Master Report and the custody award in favor of Mrs.
Barton.  Barton points to Curtis's deposition testimony in which
Curtis admits that he does not know precisely when in August
Barton left Florida.  That admission is unimportant.  Curtis's
conclusion that Barton left Florida notwithstanding an order of
the Florida Court is directly supported by the Superior Court's
Amended Order.

     Barton also argues that the first assertion -- that the

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 23

have relied inappropriately on certain documentation in issuing

the Amended Order.  That fact might have been germane to the

Court's analysis had Barton established that that documentation

originated with Curtis.  The record, however, shows no such

thing.  In fact, the deposition testimony on which Barton relies

so heavily reflects that Curtis went to the Superior Court and

retrieved the file in the custody proceeding after the Amended

Order had been issued.  As a consequence, Barton has submitted no

competent evidence to establish that a reasonable finder of fact

could conclude that Curtis entertained serious doubts about the

truth of his assertions or had obvious reason to doubt the

accuracy of the information he included in the 2003 Affidavit.

Indeed, Curtis's deposition testimony shows just the opposite.

That is, Curtis honestly believed in the accuracy of the

information he reported.  *Cf. Meyer v. Bd. of County Comm'rs*, 482

---

Florida Court awarded custody to Mrs. Barton -- is false or was
made with reckless disregard for the truth because the Appellate
Division concluded that "there was no award of residential
custody to [Mrs.] Barton because there was no Florida court Order
making such an award." (Pl.'s Resp. to Def.'s Statement of
Undisputed Material Facts 9.)  That argument is deficient.  The
Appellate Division made no such conclusion.  The Appellate
Division found only that the Superior Court had not properly
authenticated the Ratification Order in the criminal prosecution
of Barton.  There was no finding on whether the Florida Court --
or any court -- determined custody of the Bartons' children.  It
also bears noting that the Appellate Division entered its ruling
on December 30, 2004, well after Curtis submitted the 2003
Affidavit.  Accordingly, the effect of the Appellate Division's
ruling was unknown to Curtis at the time he prepared the
affidavit.

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 24

F.3d 1232, 1240 (10th Cir. 2007) (finding that the officers were

not entitled to qualified immunity where there was evidence to

support "a jury finding that one or more of the officers

deliberately lied in order to effect the detention of the

plaintiff").

To show that Curtis made the six omissions listed above with

reckless disregard, Barton again refers to Curtis's deposition

testimony.  Save for the sixth omission[21], that testimony

actually undermines, rather than substantiates, Barton's

position.  In the best-case scenario for Barton, that testimony

merely demonstrates that those omissions were made negligently.

That is, Barton has adduced no evidence that Curtis had

information in his ken that he deliberately or recklessly

---

[21]  With respect to the sixth omission, Barton relies on two
affidavits to show that Curtis harbored animus toward Barton that
Curtis should have disclosed in the 2003 Affidavit.  Those
affidavits are signed by Robert P. Ellmann, the "ex-stepfather-
in-law" of Mrs. Barton, and Sharon Ladd Ellmann, the "ex-mother-
in-law" of Mrs. Barton.  Those affidavits describe Curtis's
arrest of Barton in South Carolina and aver that during that
arrest Curtis stated that Barton would be "buried under the
jail."  During his deposition, when asked whether he felt any ill
will toward Barton or whether he had made such a statement,
Curtis responded in the negative.  Normally, the resolution of a
factual dispute of this nature is inappropriate at the summary
judgment stage.  In a qualified immunity analysis, however, this
particular factual dispute is irrelevant.  Because "the test for
immunity is solely one of objective reasonableness, any
subjective intent, motive, or even outright animus is irrelevant
in a determination of qualified immunity based on arguable
probable cause to arrest, just as an officer's good intent is
irrelevant when he contravenes settled law." *Morris v. Dillard
Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001)
(alteration, quotation marks and citation omitted).

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 25

withheld.  Even assuming, however, that those omission were made
with reckless disregard, Barton would still come up short.
Barton is also required to show that those omissions were
necessary, or material, to a finding of a probable cause. *Wilson*,
212 F.3d at 786-87.  Barton has not met that burden.  Even if the
Court inserted those five omissions into the 2003 Affidavit,
there would nevertheless be probable cause to believe that Barton
had committed fraud on the Superior Court based on that court's
finding that Barton had committed that crime.

     The Court does not question that Curtis's investigation
could have been more exhaustive.  He could have made direct
inquiries of the Florida Court and sought certified copies of the
documents from that court's custody proceeding included in the
Superior Court file.  He also could have personally made
inquiries of individuals with firsthand knowledge of the case.
Indeed, the fruit of Curtis's investigative laxity was Barton's
improperly obtained conviction.  The Court is fully cognizant of,
and sympathetic to, Barton's plight.  It is no small sacrifice to
be convicted of a crime, especially where the conviction is
obtained in error.  Notwithstanding Barton's predicament, the
viability of Barton's claim does not turn on Curtis's failure to
avail himself of other investigative opportunities.  Rather,
Barton is obligated to show that that failure resulted from
Curtis's reckless indifference to the truth. *See Beard v. City of*

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 26

*Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) ("[W]hile in hindsight it is beyond cavil that [the investigating officer] made a mistake in his representations . . ., and while the mistake may have had an impact in the outcome of . . . the warrant application hearing, neither of these points bears much relevance to our inquiry. Under the Fourth Amendment our inquiry is focused neither on the existence nor the consequence of [the investigating officer's] error but *on the intention behind it*.") (emphasis supplied). While Curtis may have been negligent, negligent conduct alone provides an insufficient basis on which to find a constitutional violation.[22] *See Miller*, 475 F.3d at

---

[22] To the extent Barton attacks Curtis's investigation as constitutionally deficient, Barton appears to assert a claim for intentional failure to investigate. Courts recognize a substantive due process cause of action for reckless investigation. *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 210, 212 (2d Cir. 2007); *Wilson v. Lawrence County, Mo.*, 260 F.3d 946, 956 n.8 (8th Cir. 2001); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992); *Whitley v. Seibel*, 613 F.2d 682, 686 (7th Cir. 1980). To prevail on such a claim, the plaintiff must show that the investigating official's conduct shocks the conscience. *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (citation omitted). The recklessness standard contains a subjective component similar to criminal recklessness. *Wilson*, 260 F.3d at 956 n.9. Neither negligence nor gross negligence amounts to a due process violation. *Amrine*, 522 F.3d at 833-34 (citation omitted).

Here, Barton has adduced no evidence showing that Curtis purposely disregarded evidence suggesting that Barton was innocent, consciously suppressed exculpatory evidence or attempted to groundlessly inculpate Barton. As noted earlier, at most, Barton has shown that Curtis acted with negligence, or perhaps even with gross negligence, in the execution of his investigation. Importantly, that showing does not suffice to succeed on a due process claim for failure to investigate. *See*

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 27

627-28 ("A plaintiff's 'allegations of negligence or innocent

mistake' by a police officer will not provide a basis for a

constitutional violation.") (quoting *Franks*, 438 U.S. at 171);

*Wilson*, 212 F.3d at 783 n.1 ("[N]egligent police work, even if

proven, does not violate the due process clause.").

Accordingly, making every reasonable inference in Barton's

favor, no reasonable jury could find facts that would lead to the

conclusion that even a "corrected" version of the 2003 Affidavit

lacked probable cause.  Curtis is therefore entitled to qualified

immunity.  As such, the Court need not reach the remainder of the

qualified immunity inquiry. *See Wilson*, 212 F.3d at 792; *see also*

*McKinney v. Richland County Sheriff's Dep't*, 431 F.3d 415, 418

(4th Cir. 2005); *Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55,

65 (1st Cir. 2004).

## IV.   CONCLUSION

For the reasons given above, the Court finds that there are

no material facts in dispute and that Curtis is entitled to

judgment as a matter of law on his qualified immunity defense.

---

*Orsatti*, 71 F.3d at 484 (noting that "the issue is not whether
the information on which police officers base their request for
an arrest warrant resulted from a professionally executed
investigation; rather, the issue is whether that information
would warrant a reasonable person to believe that an offense has
been or is being committed by the person to be arrested").

*Barton v. Curtis, Jr., et al.*
Civil No. 2005-2
Memorandum Opinion
Page 28

Accordingly, Curtis's motion will be granted and Curtis will be

dismissed from this matter.   An appropriate judgment follows.


                                    S_____
                                      **CURTIS V. GÓMEZ**
                                        **Chief Judge**